# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| DELORES A. HEBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   2:12-cv-2782-TMP |
| | ) | |
| R & L FOODS, LLC, | ) | |
| d/b/a Wendy's Old Fashioned | ) | |
| Hamburgers Restaurant, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This action is before the court on two motions for summary judgment. The first was filed by the defendant, R&L Foods, LLC ("R&L").  (Doc. 17).   The second was filed by the individual defendant, Sheila Brown.  (Doc. 20).    Both motions were supported by a brief and evidentiary submission.  The plaintiff has filed briefs in opposition to the motion, along with evidentiary submissions.  The defendants jointly filed a motion to strike portions of the affidavit of Kia McNair, submitted by plaintiff in opposition to the motions for summary judgment, and to strike certain portions of the plaintiff's deposition.  (Doc. 18).   The plaintiff did not file any opposition to the motion to strike.   The court heard oral argument on the motions.[1]   The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c).

---

[1] The motion to strike the McNair affidavit (doc. 18) is DENIED.   The statements noted by the defendants are not hearsay.   The motion to strike portions of Hebert's deposition testimony is DENIED as moot: even if admissible and considered by the court, the plaintiff's testimony at issue does not change the conclusion that the plaintiff has failed to provide evidence sufficient to demonstrate a *prima facie* case of sexual harassment or retaliation.

## I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper " if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking  summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Id. at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   The substantive law will identify which facts are material and which are irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Id. at 248.   "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   Id. at 249.   His guide is the same standard necessary to direct a verdict:   "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).   However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).   Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.   Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).   Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor.   Anderson, 477 U.S. at 255.   The non-movant need not be given the benefit of every

inference but only of every reasonable inference.   <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS

Viewing the evidence in the light most favorable to the plaintiff, the following undisputed facts are relevant to the instant motion.

Delores Hebert, a female, was hired by R&L in April 2011 to work in the Trussville location of one of the Wendy's restaurants the corporation operates.   Defendant Brown, a female, was employed as an assistant manager at the restaurant, and supervised Hebert when she worked the same shift as Brown.   Brown was supervised by Patricia Walker, a general manager.   Mike Smiley also was an assistant manager at the store.   The store where Hebert worked had an employee break room.   On the wall of the breakroom R&L had posted its policy prohibiting harassment, and informed employees that they could report any harassment by calling a number listed on the poster and speaking to David Westerfield, R&L's director of operations, or Gary Real, the company's human resources director.   (Decl. of Real, ¶5).

Hebert states that in early May 2011, Brown was showing Hebert what areas needed to be cleaned in the men's restroom.   As they were both kneeling down to look under the sink, Brown's left elbow touched Hebert's right breast.   At the time, Hebert thought that the touching was accidental, and she never changed her mind about whether that incident was accidental.   (Depo. of Hebert, p. 350).

Late in May of 2011, Hebert was in the restaurant's dry stockroom, looking for cups. Brown entered the stockroom and stood behind Hebert, pressing her breasts into plaintiff's back,

4

breathing down plaintiff's neck, and sniffing her as she showed her where the cups were.   Hebert thought that the contact was intentional because she believed there was plenty of room for Brown to move around her.   The space between the shelves in the stockroom is about 24 inches.   (Affi. of Westerfield, ¶ 12a).   While in the dry stockroom, Hebert told her: "[Y]ou are a woman, you sit on the toilet and you piss and you bleed just like I do; don't you ever do that to me again."   (Depo. of Hebert, p. 179).   Hebert called the Equal Employment Opportunity Commission to ask "what do you do when you want to file a complaint against a manager in the store," and they told her to tell Walker.   (Depo. of Hebert, p. 181).   Hebert asked Walker, "What do you do when one of y'all people start bothering you," and Walker told her that she (Walker) had been passed up for a promotion.   Their conversation was interrupted by a phone call, and Hebert later told Walker that "just because this is black on black, that does not mean it's not discrimination."   (Depo. of Hebert, p. 183).[2]   Walker told her to write it down and put in an envelope where employees put requests for days off.   Two or three days later, Hebert wrote a note that said she wanted "to file a harassment suit against Ms. Sheila Brown," and left it in the envelope.   She did not sign the note or put her name on it.   The next day Hebert saw Walker open the envelope, look at the note, and say that "it must not be true, they leave no name."   Walker then threw the note into the trash. Hebert did not tell Walker that she was the person who left the note, nor did she question Walker about the incident or seek to follow up on the note.   (Depo. of Hebert, p. 184).

Hebert complains of a third incident, which she described as a sexual advance by Brown. In September of 2011, Hebert was making salads at the salad sink, and Brown came behind Hebert

---

[2]The plaintiff has not made any allegations of race discrimination.

5

and told her that she was sorting the lettuce incorrectly.   Hebert said Brown stood behind her "and I could feel her breasts up against my back, and she said you're still doing it wrong" (Depo. of Hebert, p. 195).   Hebert just looked at her and Brown "went on about her way and I went on about my way." (Depo. of Hebert, p. 196).   Hebert described the space between the salad tables as enough space to fit two people back to back, but too tight to fit three people.   (Depo. of Hebert, p. 197).   The space measures approximately 36 inches in width.   (Affi. of Westerfield, ¶ 13).

Hebert also complains that Brown would frequently "bump into" her in the workplace. She further said that Brown would bump into other workers in the restaurant's food preparation areas, both male and female.   Hebert also had accidentally bumped into coworkers while working there.   Hebert described Brown as "nasty" and said she acted that way towards both male and female employees.   (Depo. of Hebert, p. 130-31).   Two former employees whom Hebert has said were victims of Brown's bad treatment were males, Deon and Tremele.   She once told Brown: "Sheila, I don't know who you think I am, but I'm not going to let you play with me like that. ... [Y]ou got Deon and Tremele fired for no reason, but I'm not Deon and Tremele, I am not going out like a bitch." (Depo. of Hebert, p. 153).

Hebert further complains that Brown refused to perform managerial duties when Hebert needed her to.   She has stated that Brown did not set up the station properly and that she would "take her lovely time" when Hebert needed her assistance at the cash register.   (Depo. of Hebert, p. 205-07).   A former co-worker said Brown wouldn't pass along orders or bring Hebert change when she needed it at the register.   (Affi. of McNair at ¶ 5).

On November 16, 2011, Hebert and Brown had been arguing about Hebert's work schedule.   Brown had demanded that Hebert not leave the restaurant until the worker for the next

shift had arrived, and Hebert told Brown that she "can't make [her] stay after [her] shift is over when an employee is always running late."   Brown told her not to "talk to [her] that way," and then followed Hebert to the area where the machine that toasts the hamburger buns[3] was located. Brown pinned Hebert against the machine with her forearm for three or four seconds.   Hebert felt heat from the toaster but was not injured.   She became angry and screamed and cursed at Brown in front of employees and customers.   (Decls. of Mooney, Harris, and Smiley, Def. Exhs. 6, 7, and 8).   She later heard Brown "holler" at her that she was fired, and that she should go home.   (Depo. of Hebert, p. 141).   Hebert clocked out about 3 hours before her shift ended.   She tried to call Walker, but did not get an answer.   She called Smiley that evening, and he told her to bring her shirts in with her the next day because she was going to be fired.   He said that "that's some bullshit, they don't even investigate, they just fire the best people we get."   (Depo. of Hebert, pp. 147-48).   Hebert returned the next morning with her shirts.   Walker told her that her services were no longer needed.   (Depo. of Hebert, p. 146).

In addition to the unsigned note left in Walker's envelope in May 2011, Hebert claims she made two other complaints about Brown's harassment.   She complained to Mike Smiley after Brown told her she was fired.   She also made a telephone call to an R&L office in Hoover in the fall of 2011,[4] and asked the female who answered the phone who she should talk to about sexual harassment.   The woman said she should talk to her manager.   The woman also asked if she had

---

[3]The parties have debated whether the machine is a "bun toaster" or a "bun warmer."   The court chooses simply to call it a machine.

[4]It is not clear from Hebert's deposition whether she made the call in September or in November of 2011.   At page 342 or her deposition, she said the call was made in September.   At page 187, she said the call was made in November.

called David Westerfield, whose name was listed on the poster in the restaurant that instructed employees on how to report discrimination or harassment.   Hebert asked the woman "why would I talk to him when he denied [Walker] a job and was discriminating against [Walker]..."   (Depo. of Hebert, p. 342-43).   Hebert asked the woman for the corporation's phone number, which the woman provided.   Hebert never called the number.   Hebert also never called Gary Real, the human resources director, whose name also appeared on the poster, which remained posted in the restaurant during Hebert's employment.

On January 5, 2012, Hebert filed a charge of discrimination with the Equal Employment Opportunity Commission.   She received a right-to-sue letter, and timely filed the complaint that commenced this lawsuit on August 23, 2012.   She alleges that: (1) she was subjected to unlawful sexual harassment by Brown while employed at R&L; (2) R&L retaliated by terminating her in violation of Title VII after she complained about the harassment; (3) R&L negligently hired and/or supervised Brown; (4) Brown committed an assault; (5) Brown committed a battery; and (6) Brown invaded her privacy.

The defendant R&L seeks summary judgment on all of Hebert's claims against it, asserting that: (1) the conduct complained of as sexual harassment does not rise to the level necessary to sustain a hostile work environment claim based on gender; (2) the retaliation claim is due to be dismissed because she did not engage in protected activity, and even if she did, the complaint was not causally connected to her termination; and (3) R&L has given a reason for her termination and that reason has not been shown to be a pretext; and (4) plaintiff has failed to demonstrate any of the elements of a state-law tort claim.   Defendant Brown seeks summary judgment on the assault and battery and invasion of privacy claims.

8

## III. DISCUSSION

### A.  Sexual Harassment

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).  Claims of same-sex discrimination or harassment may be brought under Title VII.  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998).

"In order to sustain a Title VII claim for harassment sufficient to create a hostile work environment, the plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she has been subjected to unwelcome harassment based upon her gender or ethnicity; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there exists a basis for holding the employer liable.  See Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).  An employer is vicariously liable to a victimized employee when the hostile environment has been created by a supervisor "with immediate (or successively higher)" authority over the employee. Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 2292-93, 141 L. Ed. 2d 662, 689 (1998).

The plaintiff asserts that she was the object of unwanted sexual advances by a female supervisor.  It is undisputed that Brown had supervisory authority over the plaintiff.  Defendant R&L's motion asserts that the conduct complained of was not sufficiently severe or pervasive that

it could constitute a violation of federal law.[5]   R&L further asserts that Brown's conduct did not alter the terms or conditions of Hebert's employment.

Title VII does not prohibit all verbal or physical workplace harassment.   Oncale, 523 U.S. at 80.   "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." 523 U.S. at 80, citing Harris, 510 U.S. at 25 (Ginsberg, J., concurring).   "In other words, an environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes."   Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999).   "Personal animosity is not the equivalent of sex discrimination" and a plaintiff "cannot turn a personal feud into a sex discrimination case." Succor v. Dade County School Board, 229 F.3d 1343, 1345 (11th Cir. 2000).

---

[5]In this case, Plaintiff claims that Brown sexually harassed her; specifically, that Brown's sexual harassment created a hostile work environment.   (Complaint, Count One, doc. 1).   The terms "*quid pro quo*" and "hostile environment" continue to be used to describe types of violative conduct; however, the relevance of any distinction has diminished since the Supreme Court's decisions in Burlington Indus., Inc., v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).   The Eleventh Circuit Court of Appeals has stated that the same analysis applies whether the claim is framed as *quid pro quo* or hostile environment.   Johnson v. Booker T. Washington Broadcasting Services, Inc., 234 F.3d 501 (11th Cir. 2000).

The Eleventh Circuit Court of Appeals examined the "severe and pervasive" element of a Title VII sexual harassment claim in <u>Gupta v. Florida Board of Regents</u>, 212 F.3d 571 (11th Cir. 2000), overruled on other grounds, <u>Burlington Northern and Santa Fe Ry. Co. V. White</u>, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006).   The court in <u>Gupta</u> went explained that the requirement is critical to prevent the courts from turning ordinary socializing in the workplace into discriminatory conduct.   <u>Id.</u>

In <u>Mendoza</u>, the court of appeals explained:

> Although Title VII's prohibition of sex discrimination clearly includes sexual harassment, Title VII is not a federal "civility code." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S. Ct. 998, 1000-02, 140 L. Ed. 2d 201 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (internal citation omitted)); *Meritor [Savings Bank, FSB v. Vinson]*, 477 U.S. at 67, 106 S. Ct. 2399 ("Not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.").

<u>Id.</u> at 1245.

The defendant correctly asserts that the Supreme Court has recognized that it is not enough for Hebert to show that her workplace was offensive; rather, she must show that her workplace was so permeated with discriminatory intimidation, ridicule, and insult that a reasonable person would perceive the environment as hostile or abusive.   <u>See</u> <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).

11

In determining if this critical element of a sexual harassment claim has been met, the court must look to the frequency, severity, and pervasiveness of the conduct complained of.   Again, the court of appeals has said:

> The objective component of this analysis is somewhat fact intensive. Nevertheless, the Supreme Court and this Court have identified the following four factors that should be considered in determining whether harassment objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.   Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris, 510 U.S. at 23, 114 S. Ct. 367). The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment.   Id.; see   Harris, 510 U.S. at 23, 114 S. Ct. 367;   Henson, 682 F.2d at 904; Faragher, 118 S. Ct. at 2283 (citing Harris, 510 U.S. at 23, 114 S. Ct. 367, and explaining that "we directed courts to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances'").

Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999).   Moreover, it has been noted that Title VII may not be used as a tool to punish "the ordinary tribulations of the workplace," Faragher, 524 U.S. at 788, or failure to treat a female employee with "sensitivity, tact and delicacy," Minor v. Ivy Tech State College, 174 F.3d 855, 858 (7th Cir. 1999).

The Eleventh Circuit Court of Appeals considered the totality of the circumstances in an employee's allegations of sexual harassment in Dar Dar v. Associated Outdoor Club, Inc., 248 Fed. Appx. 82 (2007).   The court, applying the Gupta standard, rejected a plaintiff's claim that two sexually inappropriate comments and two incidents of intentional touching of the buttocks during a period of over 22 months was sufficiently severe or pervasive to constitute a Title VII

violation.   248 Fed. Appx. at 85-86.   In <u>Dar Dar</u>, as in most sexual harassment cases, the plaintiff had complained of sexually explicit comments, jokes, or propositions, accompanied by physical contact.   <u>See, *e.g.*</u>, <u>Spivey v. Akstein</u>, 2005 WL 3592065 (N.D. Ga. 2005) (examining plaintiff's allegations which included seductive looks, comments, blowing kisses, a kiss, locking her into a room, and reaching under the plaintiff's blouse to touch her breast).   A case like this one is unusual: the plaintiff alleges sexually-tinged physical contact in the absence of any sexual language or suggestion.   There is no requirement that physical harassment be accompanied by verbal harassment, of course, but sexual language can shed light on the intent of the alleged harasser and can have an impact upon both the subjective and objective offensiveness of the conduct.   There are types of physical contact that can categorically be defined as sexual, such as rape; other types of physical contact, such as a pat on the back, are, at best, ambiguous. Discerning whether touching incidents may be violative of Title VII is not an easy task.

The reasoning of the court in <u>Spivey</u> is instructive.   The court considered the conduct in <u>Mendoza</u> as a floor above which offensive conduct must rise in order to be actionable.   In <u>Mendoza</u>, the plaintiff alleged: "four categories of harassing conduct: (1) one instance in which Page said to Mendoza 'I'm getting fired up'; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Pages' 'constant' following and staring at Mendoza in a 'very obvious fashion.'"   <u>Mendoza</u>, 195 F.3d at 1247.   The court determined that the Mendoza's claim "falls *far* short of actionable hostile environment sexual harassment."   195 F.3d at 1249 (emphasis added).

13

Mendoza defines actionable conduct that could create a hostile work environment as "sexual advances, requests for sexual favors, and other conduct *of a sexual nature* ... that was *based on the sex* of the employee."  195 F.3d at 1245 (emphasis added).  A plaintiff seeking to establish a hostile environment claim based on sex "must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of sex."  Oncale, 523 U.S. at 80-81.  Where some of the conduct complained of is not sexual in nature, the plaintiff must demonstrate that the offensive conduct was "also suffered on account of sex."  Raniola v. Bratton, 243 F.3d 610, 621 (2d Cir. 2001).

In this case, Hebert asserts that she was subjected to three specific incidents of physical contact throughout the course of her 7-month employment at R&L, and that there were "dozens" of incidents of "bumping" that also should be considered as part of her sexual harassment claims. Also, plaintiff asserts that Brown did not perform her managerial duties in a manner that was helpful to Hebert, thus making Hebert's job harder to perform.  She does not allege that Brown ever made any sexual comment of any kind to plaintiff or anyone in the workplace.[6]  In order for the plaintiff to survive the defendants' motions for summary judgment, the court must find both that the environment was considered by plaintiff as hostile and abusive and that a reasonable person would have perceived her working environment as hostile and abusive.

The only conduct that is complained of that could be considered frequent was Brown's act of "bumping" into Hebert while working in the tight quarters of the fast food restaurant.   Plaintiff

---

[6]To the contrary, the only sexual language discussed in the evidence is the plaintiff's comment to Brown that Brown was a woman who must "piss and bleed" like the plaintiff, and that she (Hebert) was "not going out like a bitch."    (Depo. of Hebert, pp. 164, 153).

concedes that Brown bumped into other employees, male and female, and that plaintiff herself bumped into other workers.   While Hebert may have believed that the bumping had some sexual element to it, there is simply no evidence that Brown's movements were intended to be sexual or to be harassing to plaintiff.   Common experience compels the conclusion that such bumping, while perhaps unwelcome and unpleasant, cannot provide a basis for liability under Title VII.

The conduct complained of that involved two instances of Brown's pressing her breasts against plaintiff's back also have an element of ambiguity.   Brown was in the proximity of plaintiff for the legitimate reason of helping her find supplies or instructing her on the salad preparations.   Although Hebert alleges there was "plenty of room" for Brown to go around her, the pictures, diagrams, and measurements indicate that the spaces were very cramped, and suggest that touching could well have been inevitable.   Likewise, breathing and sniffing at another person could signify a sexual advance, but could simply be incidental and devoid of any sexual overtone. Such limited and ambiguous sniffing and touching, which is even less overt than that in Mendoza, unaccompanied by any sexual comments, is insufficient to meet the threshold level of severity or pervasiveness established by the Supreme Court.

The final action to which plaintiff took great offense was when, she alleges, Brown used her forearm to pin Hebert to the bun toaster for a few seconds.   Hebert was not physically injured, although she felt heat from the toaster on her back.   Viewing this incident in the light most favorable to the plaintiff, as the court must, the action is physically threatening, but completely devoid of any sexual element.   Even viewing the incident in the totality of the circumstances, and assuming that the other contacts had a sexual element to them, the actions do not meet the Mendoza threshold.

15

Accordingly, even though the conduct was subjectively offensive, and arguably objectively offensive, it was neither severe nor pervasive.   The court cannot find that the conduct altered the terms or conditions of Hebert's employment.   The facts that Hebert did not like being bumped and had to seek the help of other managers to get change or to have her orders handled promptly reveal only the "ordinary tribulation" of the workplace, and not the type of change in the terms or conditions of employment that would be actionable under Title VII.   Consequently, R&L's motion for summary judgment is due to be granted as to plaintiff's Title VII claim that she was subjected to a hostile environment.


**B.   Retaliatory Discharge**

Hebert asserts that she was subjected to sex discrimination in that she was fired after she complained to Walker that Brown had sexually harassed her.   Hebert alleges that she complained of harassment by leaving an unsigned note in Walker's envelope and by calling R&L's Hoover office and asking a woman there who to talk to about sexual harassment.   The note was left in Walker's envelope in May 2011, and the call to the Hoover office was made in September or November of 2011.   Plaintiff was fired on November 17, 2011, following her row with Brown the day before.

In order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove each of the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision.   Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008), citing Burlington N. & Santa Fe Ry. Co. v.

16

<u>White</u>, 548 U.S. 53, 126 S. Ct. 2405, 2410-16, 165 L. Ed. 2d 345 (2006).   There is no dispute that Hebert suffered an adverse action, but defendant argues that she did not engage in any statutorily protected activity and that, even if she did, there is no causal relation between the complaint and the termination.

A generalized complaint about bad treatment is not sufficient to meet the requirement that the plaintiff engaged in protected activity.   The Eleventh Circuit Court of Appeals has noted:

> We affirm the district court's judgment because, as the court correctly noted, the record contained no evidence that Brown engaged in a protected activity by making a complaint about racial discrimination or harassment. Brown admitted that she never mentioned the word "race" when she complained about Kirby's behavior, that she had no knowledge of Kirby making any racially derogatory comments, and that Kirby took out her anger on everyone, including the white office assistant. Moreover, Brown did not engage in a protected activity because she never voiced a complaint that the City was engaged in an unlawful employment practice.

<u>Brown v. City of Opelika</u>, 211 Fed. Appx. 862 (11th Cir. 2006).

The note Hebert gave Walker was not a complaint about sexual harassment or gender discrimination.   The note did not even suggest that the complained-of "harassment" was sexual or linked to gender; it only stated that the unnamed person wanted to complain of harassment by Brown.   The call to an unnamed employee at the Hoover office likewise was not a complaint about sexual harassment.   At best, the call was a request for information about how to make a complaint about sexual harassment, and the requested information was provided.   Hebert, however, did not tell Walker that she was being *sexually* harassed, and she did not call the corporate number given to her or the numbers provided on the information poster displayed in the employee breakroom.

17

Even if her call could be construed as a protected activity, she has failed to show that the complaint was causally connected to her termination.   While the causal link is broadly construed to require plaintiff to prove little more than that the adverse action and the protected activity were not "wholly unrelated," it nevertheless is well settled that the plaintiff "must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action."  Goldsmith, 513 F.3d at 1278.   It is not sufficient that plaintiff merely show that someone in the defendant's organization knew of the protected activity; rather, the plaintiff must show that the person who engaged in the alleged retaliatory act was aware of the protected activity. See Tucker v. Housing Auth. of Birmingham, 229 Fed. Appx. 820, 2007 WL 10345761 (11th Cir. 2007).   "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.  When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker."  Brown, 211 Fed. Appx. at 864, quoting Walker v. Prudential Property & Casualty Ins. Co., 286 F.3d 1270, 1274 (11th Cir. 2002).   The Eleventh Circuit Court of Appeals has further stated that "summary judgment cannot be avoided based on hunches unsupported with significant probative evidence."   Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1198 (11th Cir. 1997).

In this case, Hebert may suspect that Walker knew the note was from her and that the note was about sexual harassment, but there is no evidence that supports this hunch or belief.[7]

---

[7]R&L argues that any complaint made to Walker is an insufficient complaint because the company policy provided that any employee filing a complaint about any Title VII discrimination should notify either Westerfield or Real.   However, the Faragher defense is not available to R&L in this case because the plaintiff suffered an adverse employment action – she was terminated. Even if the defense were at issue, however, the court finds that any complaint made by Hebert to Walker was insufficient for any purpose because it never alleged that any mistreatment was on

Accordingly, there is no evidence that Hebert engaged in a statutorily protected activity before she was fired.

The Supreme Court has recently made the plaintiff's burden of proving retaliation even more difficult.   In University of Texas Southwestern Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013), the Court stated:   "The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."   133 S. Ct. at 2534.   It is not enough that retaliation may have been one of several motivating reasons for the termination; it must be shown that the adverse action would not have occurred "but for" the desire for retaliation.   Hebert has failed to show that she would not have been fired if she had not opposed Brown's alleged harassment.   It is undisputed that a row occurred between plaintiff and Brown on November 16, 2011, during which plaintiff screamed and cursed at Brown in the presence of co-workers and customers.   Plainly such insubordinate and threatening conduct was adequate reason to fire her, even if defendants also wanted to retaliate against her for complaining of harassment.   The evidence simply does not meet the "but for" test for a retaliation claim.   For all of these reasons, R&L's motion for summary judgment on the retaliation claim is due to be granted.

Finally, even if plaintiff had met her burden of proving a *prima facie* case of retaliation, the presumption may be rebutted if the employer offers a legitimate, nondiscriminatory reason for the

---

account of sex or gender, and therefore did not provide notice that the plaintiff was complaining of a Title VII violation.   Finally, even if it did, the note was delivered in May 2011, a full six months before plaintiff was terminated in November.   The lapse of such a period of time severely undermines any causal relationship between the note and the termination.

employment action.   Once the employer meets its burden of articulating a non-discriminatory reason, the burden shifts back to the plaintiff to show that the reason is either not worthy of belief or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason.   Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

Because the employer has offered a nondiscriminatory reason for the termination – that Hebert was disruptive at work in front of customers – to overcome the motion for summary judgment Hebert must demonstrate by competent, admissible evidence that the defendant's nondiscriminatory reason is merely a pretext for retaliation against her.   She must show not only that the articulated reason is false, but also that the defendants' true reason for the termination was retaliation.   See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993).   It is not the duty of this court to evaluate whether the decision to terminate Hebert was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes.   See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

No fact in evidence logically calls into question the credibility of the articulated nondiscriminatory reason.   To survive summary judgment, a plaintiff must show more than "mere curious timing coupled with speculative theories."   Raney v. Vinson Guard Serv. Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).   The court's job is to consider whether the evidence submitted by the parties "presents a sufficient disagreement to require submission to a jury."   Combs, 106 F.3d at 1526.   The only

evidence before this court indicates that the termination was made due to concerns separate from any accusation of sexual harassment that Hebert may have made. The evidence is undisputed that after Hebert was pinned to the bun toaster, she became angry and shouted and cursed at Brown in front of co-workers and customers. Consequently, Hebert has failed to meet her secondary burden of showing that R&L's stated reason for her termination was pretextual, and for this additional reason the claim of retaliation is subject to summary judgment in favor of the defendant.

### C.   State-Law Claims

Plaintiff also sets forth a claim of negligent supervision against R&L, and claims of assault, battery, and invasion of privacy against Brown, all based on Alabama law. The court has jurisdiction over the remaining state-law claims only because they fall within the Court's supplemental jurisdiction as provided in 28 U.S.C. § 1367(a). The Court is not required to exercise supplemental jurisdiction in all cases. The statute provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." Id. § 1367(c)(3).

It is entirely discretionary with the court whether to exercise supplemental jurisdiction. Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). In exercising its discretion under Section 1367(c), "the court should take into account concerns of comity, judicial economy, convenience, fairness, and the like." Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1123 (11th Cir. 2005) (internal quotes omitted). The Eleventh Circuit Court of Appeals has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. Raney v. Allstate Insurance Co., 370

F.3d 1086, 1089 (11th Cir. 2004).   This preference exists because, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine─judicial economy, convenience, fairness, and comity─will point toward declining to exercise jurisdiction over the remaining state-law claims."   Carnegie─Mellon University v. Cohill, 484 U. .S. 343, 350 n. 7 (1988).   While the preference is especially applicable when the federal claims are dismissed early in the litigation, the preference also applies when the federal claims are eliminated on motion for summary judgment.   See, *e.g.*, Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005); Murphy v. Florida Keys Electric Cooperative Association, 329 F.3d 1311, 1320 (11th Cir. 2003); Graham v. State Farm Mutual Insurance Co., 193 F.3d 1274, 1282 (11th Cir.1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3).").   See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided as a matter of comity and to promote justice between the parties).   See also Wood v. Florida Atlantic Univ. Bd. of Trustees, 432 Fed. Appx. 812 (11th Cir. 2011) (affirming dismissal of claims over which there was no original jurisdiction when federal claims were dismissed, even though dismissal was based upon untimely motion for summary judgment filed on the "last day before trial.")

Even though the statute of limitations for filing these claims might otherwise have expired, Congress has provided that, after a federal court declines to exercise supplemental jurisdiction, the state-law limitations period is tolled during the time the claim was pending in the federal court, and for 30 days after the federal court dismisses the claims.   28 U.S.C.   § 1367(d).   The court is

inclined to retain jurisdiction in this case only if considerations of judicial economy favor retention, and outweigh any factors of comity and fairness that suggest dismissal.

In this case, the state court is in a better position to determine whether the defendants have committed the torts alleged in the complaint, and the defendants and plaintiff all are located within Alabama.   It is more appropriate for Alabama courts to address whether the touching and "bumping" that occurred in this case are worthy of a legal remedy under state tort law.   This is further bolstered in this case because most of torts alleged are against defendant Brown, over whom the court exercised *only* supplemental jurisdiction.   There never were federal claims against her, so that proceeding with the state-law claims against her in the total absence of any remaining federal claims is a particularly intrusive invasion of state sovereignty.   Accordingly, the court finds that the motions for summary judgment on claims of negligent supervision, assault, battery, and invasion of privacy are due to be denied, and the   plaintiff's state-law claims are due to be dismissed without prejudice.


**IV.   CONCLUSION**

Accordingly, consistent with the foregoing discussion of the evidence presented by all parties in support of and in opposition to the motions for summary judgment, this court determines that there are no genuine issues of material fact and that defendant R&L is entitled to judgment as a matter of law on the Title VII claims alleging hostile environment and retaliation.   The state-law claims against defendants R&L and Brown are due to dismissed pursuant to 28 U.S.C. § 1367(c)(3).   Consequently, R&L's motion for summary judgment (doc. 17) is due to be granted, and all of plaintiff's federal claims are due to be dismissed with prejudice.   The court declines to

exercise jurisdiction over on the state-law negligence claim, and that claim is due to be dismissed without prejudice.  Similarly, the state-law claims addressed in defendant Brown's motion for summary judgment (doc. 20) are due to be dismissed without prejudice.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 27th day of March, 2014.


_____

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE